IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHAWN R., )<br>)<br>        Plaintiff, )<br>   v. )<br>)<br>FRANK BISIGNANO, )<br>Commissioner of Social Security, )<br>)<br>        Defendant. ) | 1:25CV118 |

**ORDER AND MEMORANDUM OPINION
OF UNITED STATES MAGISTRATE JUDGE**

The plaintiff, Shawn R. ("Shawn"), has sought review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income.[1] The Court has considered the certified administrative record and dispositive briefs from each party. Because the Administrative Law Judge's ("ALJ") decision does not allow for meaningful judicial review, the Court grants Shawn's request for remand, as set forth below.

I. PROCEDURAL HISTORY

Shawn filed an application for supplemental security income alleging a disability onset date of September 7, 2021.[2] (Tr. 202-08.) The application was denied initially and upon reconsideration. (Tr. 114-19, 122-28.) After a hearing, the ALJ determined on August 9, 2024 that Shawn was not disabled under the Act. (Tr. 18-32.) The Appeals Council denied a request for review, making the ALJ's decision the final decision for review. (Tr. 1-6.)

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. *See* Docket Entry 5. By Order of Reference, this matter was referred to the Undersigned to conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c). *See* Docket Entry 8. Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano is automatically substituted as the defendant in this suit.

[2] Shawn also filed an application for disability insurance benefits, but that claim was dismissed because he did not satisfy the insurance coverage requirements. (Tr. 18, 32, 202-08.) Shawn does not challenge this dismissal.

## II. STANDARD OF REVIEW

While Section 405(g) of Title 42 of the United States Code "authorizes judicial review of the Social Security Commissioner's denial of social security benefits," *see Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006), the scope of that review is specific and narrow, *see Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Specifically, review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Put simply: the issue before the Court is not whether Shawn is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the correct process, set forth in 20 C.F.R. § 416.920, to determine disability. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).

"The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 416.920(a)(4), 404.1520(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy.

*Id.* at 472. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

The ALJ determined at step one that Shawn had not engaged in substantial gainful activity since the alleged onset date of September 7, 2021. (Tr. 20.)

2

The ALJ next found the following severe impairments at step two: "status-post motor vehicle accident with intestinal injury/hernia, partial bowel resection and irritable bowel syndrome (IBS); migraines; status-post sinus surgery with allergies; chronic obstructive pulmonary disease (COPD); hypertension; degenerative disc disease; depressive disorder; post-traumatic stress disorder (PTSD); substance use disorder." (Tr. 21.) At step three, the ALJ found that Shawn did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 21.)

The ALJ next set forth Shawn's Residual Functional Capacity ("RFC") and determined that he could perform light work with the following additional limitations:

> occasional climbing ladders, ropes or scaffolds and stooping but frequent climbing ramps and stairs, balancing, kneeling, crouching, and crawling. Avoid concentrated exposure to humidity and temperature extremes of cold and heat. Avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dust, gases, poor ventilation and the like, and workplace hazards, such as dangerous moving machinery and unprotected heights. Avoid concentrated exposure to noise in the work setting, further defined to mean a maximum noise setting of 3, which is moderate according to the Selected Characteristics of Occupations (SCO). He is generally able to understand simple instructions and perform simple tasks; he can maintain concentration, persistence, and pace to stay on task for 2-hour periods over [the] course of [a] typical 8-hour workday with normal breaks in order to perform such tasks; in a low stress work setting, which is further defined, in addition to the type of work being performed, to mean no production-pace or quota-based work; rather, he requires a goal-oriented job primarily dealing with things instead of people, with no more than occasional changes in the work setting, and no more than occasional social interaction with supervisors, co-workers and/or the public as part of the job.

(Tr. 25-26.)

At the fourth step, the ALJ determined that Shawn was unable to perform his past relevant work. (Tr. 30.) Last, at step five, the ALJ concluded that there were other jobs in the national economy that Shawn could perform. (Tr. 30.)

IV.  DISCUSSION

3

In pertinent part, Shawn contends that "[t]he ALJ failed to adequately account for the vocationally limiting effects of [his] chronic migraine headaches in the RFC." *See* Docket Entry 10 at 5. Shawn further contends that "[t]he ALJ erred by failing to evaluate [his] need for frequent bathroom usage when assessing the RFC." *Id.* at 15. As explained in greater detail below, the Court agrees on both grounds and remands for further administrative proceedings.

A. Standard for the RFC Determination.

The RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairments and any related symptoms (e.g., pain). *See* 20 C.F.R. § 416.945; *see also Dunn v. Colvin*, 607 Fed. App'x 264, 272 (4th Cir. 2015) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)") (internal citation omitted); *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

"Social Security Ruling 96-8p explains that the RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Comm. of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Yet, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only [then] may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has held that "meaningful review is frustrated when an ALJ goes straight from listing the evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (explaining that "a proper RFC analysis has three components: (1) evidence, (2) logical

4

explanation, and (3) conclusion"). As noted earlier, the ALJ "must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (alteration in original) (quoting *Monroe*, 826 F.3d at 189). An ALJ's failure to do so constitutes reversible error. *See Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). Where an ALJ's "analysis is incomplete and precludes meaningful review," remand is appropriate. *Monroe*, 826 F.3d at 191.

Moreover, "[a]n ALJ assesses the credibility of a claimant's subjective statements about his condition as part of the RFC assessment," *Ladda v. Berryhill*, 749 F. App'x 166, 170 (4th Cir. 2018) (unpublished), using a two-part test: "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged,'" *Craig*, 76 F.3d at 594 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)).

If such an impairment exists, the ALJ must then consider, as the second prong of the test, all available evidence, including the claimant's statements about pain, to determine whether the claimant is disabled. *Id.* at 595-96. In so doing, the ALJ need not credit them if they conflict with the objective medical evidence or if the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* Where the ALJ has considered the relevant factors, *see* 20 C.F.R. § 416.929(c)(3), and heard the claimant's testimony and observed his or her demeanor, the Court will defer to the ALJ's determination regarding those subjective complaints. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Those relevant factors include:

  (i)     [Plaintiff's] daily activities;

  (ii)    The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

  (iii)   Precipitating and aggravating factors;

  (iv)    The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate his pain or other symptoms;

  (v)     Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of his

5

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve his pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Last, SSR 19-4p also provides guidance on how to evaluate primary headache disorders, such as migraines, in disability claims. *See* SSR 19-4p, 2019 WL 4169635 at *2. The ruling notes that regulations require medically determinable impairments be established by objective medical evidence from an acceptable medical source; "a person's statement of symptoms, a diagnosis, or a medical opinion" will not be used to establish the existence of a medically determinable impairment; and a finding of disability will not be made "based on a person's statement of symptoms alone." *Id.* The ruling indicates that a primary headache disorder is established as a medically determinable impairment "by considering objective medical evidence (signs, laboratory findings, or both)" from an acceptable medical source. *Id.* at *5. The ruling also notes that "the extent to which the person's impairment-related symptoms are consistent with the evidence of record" will be considered and that "[c]onsistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC." *Id.* at *8.

B. The ALJ's Assessment Omitted Certain Support for its RFC Finding.

Shawn contends that "[t]he ALJ failed to adequately account for the vocationally limiting effects of [his] chronic migraine headaches in the RFC." *See* Docket Entry 10 at 5. As explained in greater detail below, this objection is persuasive.

Here, at step two, the ALJ found without elaboration that Shawn's migraines were a severe impairment. (Tr. 20.) At step three, the ALJ referenced Listing 11.02 (regarding epilepsy), Listing 11.00 (regarding various forms of seizures), and SSR 19-4p (regarding headaches) and concluded without elaboration that Shawn had not met or equaled a listing. (Tr. 23.) As part of his step three analysis, in pertinent part, the ALJ noted that "in February 2023, when he was evaluated for headaches, no cognitive issues were demonstrated, and his memory was intact." (Tr. 24, 233-40, 819-52, 1511-15.)

Next, the ALJ determined Shawn's

6

RFC. The ALJ noted that Shawn testified he stopped working after his car accident in 2021 and that thereafter he experienced migraines several times a week with both light and noise sensitivity. (Tr. 26.) The ALJ acknowledged that Shawn testified that his migraines could last from between two to three hours to an entire day. (Tr. 26.) The ALJ then observed that on November 4, 2022, Shawn complained of migraines that occurred one to two times a week and did not respond to Excedrin. (Tr. 27 *referencing* Tr. 765 ("Bothering him most right now are migraines. He often wakes up with bad ones, lately 1-2 times weekly. Takes excedrin [sic] without much improvement. Gets N/V, avoids light, sound, then eventually resolves.").) The ALJ noted that, despite his complaints, Shawn did not appear to be in acute distress. (Tr. 27, 765.)

The ALJ further noted that in February of 2023 Shawn was evaluated for headaches and stated that they occurred at least fifteen times a month. (Tr. 27 ("The same month, he was evaluated for headaches. He said they occurred at least 15 times per month.") (internal citation omitted) *referencing* Tr. 826 ("presents for evaluation of headaches that meet . . . [the] criteria for Migraine, present since, but significantly worse in both severity and frequency since a car accident with significant trauma including loss of consciousness for undisclosed period of time, currently impacts quality of life. There are some features of cluster like episodes as well. Normal elemental neurological examination. Having at least headache 15+ per month.").) The ALJ next noted that during a January 2024 consultative examination he complained of weekly migraine headaches though he did not appear to be in acute distress. (Tr. 28, 1518, 1520.)

The ALJ then turned to evaluating the medical opinions of record and made one reference to headaches/migraines. Specifically, the ALJ noted that on reconsideration a non-examining state agency medical consultant (Dr. Joan Redd) found Shawn capable of light work with postural and environmental restrictions. (Tr. 29, 92-95.) The ALJ concluded that this opinion was "generally persuasive" and noted in pertinent part that the need for postural and environmental restrictions was consistent with, among other impairments, migraines. (Tr. 29, 92-95.) The ALJ's RFC limited Shawn's exposure to noise but did not include off task, absentee, or light sensitive limitations. (Tr. 25-26.)

C. The ALJ's Assessment of Shawn's Migraines and Headaches Does Not Allow for Meaningful Review.

The Court cannot conduct a meaningful review of the ALJ's decision based on the analysis in the

7

record.

First, the ALJ acknowledges Shawn's testimony that he is sensitive to light and noise, but then—without adequate explanation—only includes a noise limitation in the RFC. (Tr. 26, 49 ("My migraines, I get several times a week now. And they're very extreme, too, to where very sensitive to light and sound. I have to put myself in the bedroom and cut off all the lights and don't let nobody in because it hurts so bad, just the sound and light and it makes me sick.").)

This disconnect alone would require remand for additional administrative proceedings. *See Myers v. Saul*, No. 1:20CV420, Docket Entry 16 at 8 (M.D.N.C. July 2, 2021), *recommendation adopted*, slip op. (M.D.N.C. July 20, 2021) (remand warranted for further findings related to light sensitivity); *Southard v. Saul*, No. CIV-19-307-STE, 2019 WL 7285554, at *4 (W.D. Okla. Dec. 27, 2019) (finding reversible error where the ALJ failed to accommodate or properly discount claimant's well-supported allegations of photophobia).

Second, the ALJ further explained that he found the medical opinion of the non-examining state agency physician (Dr. Joan Redd) who evaluated the record on reconsideration to be "generally persuasive" (Tr. 29), and yet did not incorporate one of its key findings into the RFC determination. Specifically, Dr. Redd indicated that Shawn should avoid concentrated exposure to extreme heat, cold, humidity, noise, fumes (odors, dusts, gases, and poor ventilation), and hazards (machinery and heights). (Tr. 93-94.) However, she explained after this that Shawn should also avoid concentrated exposure to "intense/flashing lights." (Tr. 93.)

While the ALJ's RFC determination includes the other limitations set forth above, it omits any limitation regarding light. (Tr. 26.) Given Shawn's testimony regarding light sensitivity, it is unclear from the record whether this was an intentional or accidental omission. Regardless, it prevents substantial evidence review. *See Harvey J. L. v. O'Malley*, No. 1:23CV162, 2024 WL 6968939, at *5 (M.D.N.C. Jan. 23, 2024) (remand warranted where ALJ omitted restrictions in medical opinions otherwise credited); *Green v. Saul*, No. 1:19CV1175, 2020 WL 5633287, at *4 (M.D.N.C. Sept. 21, 2020) (same), *recommendation adopted by* Slip Op. (Oct. 8, 2020); *Martin v. Berryhill*, No. 1:16CV171, 2017 WL 728234, at *5 (M.D.N.C. Feb. 23, 2017) (same) *recommendation adopted by* Slip Op. (March 24, 2017).

Third, and most importantly, the ALJ made no findings about the frequency and severity of Shawn's headache-related symptoms, which are critical

to the overall disability determination. *See*, *e.g.*, *Woody v. Kijakazi*, No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023) (ALJ's failure to reach an express conclusion on the "potentially dispositive issue of whether the frequency and severity" of claimant's headaches affected the RFC finding "is an error of law that necessitates remand"); *see also generally Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (remanding where "[t]he ALJ [did] not sufficiently connect[] the dots between [the plaintiff's] impairments, supported by substantial evidence in the record, and the RFC finding").

These omissions preclude judicial review. Shawn was assessed for several severe impairments including migraines. (Tr. 21.) The ALJ's decision does not adequately address Shawn's migraines and instead merely partially summarizes the record and then renders a conclusion, skipping the formation of a logical bridge between the RFC determination and the medical record. *See Thomas*, 916 F.3d at 311 (explaining that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion").[3] A remand is therefore in order.

The Commissioner's arguments to the contrary are unavailing. The Commissioner spends much of his brief setting forth reasons for affirming the ALJ's decision that the ALJ never specifically set forth. (Docket Entry 11 at 8-13.) These are impermissible *post hoc* agency justifications. *See Anderson v. Colvin*, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (concluding that the Court may not consider post-hoc rationalizations and may only consider reasons first set forth by the administrative agency) (citing *Securities & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947)). By way of non-exhaustive example, the Commissioner contends that Shawn had little treatment for migraines and points out that he did not identify migraines when completing disability paperwork. (Docket Entry 11 at 8-9.) But the ALJ never made such findings in his decision.[4]

Beyond this, Shawn testified at his

---

[3] *See Myers v. Saul*, No. 1:20CV420, Docket Entry 16 at 12 (M.D.N.C. July 2, 2021) (remand warranted where it was impossible to trace the logical path of the ALJ's reasoning), *recommendation adopted*, slip op. (M.D.N.C. July 20, 2021); *Porterfield v. Berryhill*, No. 1:18CV319, Docket Entry 18 at 7 (M.D.N.C. Aug. 6, 2019) (same), *recommendation adopted*, slip op. (M.D.N.C. Aug. 23, 2019).

[4] Despite the Commissioner's objections to the contrary (Docket Entry 11 at 8-13), the ALJ also fails to address evidence that would be logically related to the analysis of Shawn's migraine headaches, such as certain treatment modalities (like

hearing that he gets migraines "several times a week now," that they are "very sensitive to light and sound," that some last a "whole day" and others last "only two or three hours," that he puts himself in his "bedroom and cut[s] off all the lights . . . because it hurts so bad," and that he has "to stay in bed." (Tr. 49.) The vocational expert testified that an individual off task more than 15% of the work day or absent two or more days a month would be unable to work. (Tr. 59.) The dispositive question of migraines was thus before the ALJ.

The Commissioner also points to instances of Shawn's normal mental status findings upon examination as support for the ALJ's RFC determination, some of which the ALJ noted and some of which he did not. (Docket Entry 11 at 9.) However, the absence of objective findings of an intermittent impairment during a given medical examination is not necessarily dispositive of the issue of migraine pain. *See, e.g.*, *Patricia M. v. Bisignano*, No. 1:24CV691, 2025 WL 2697242, at *10 (M.D.N.C. Sept. 22, 2025) ("findings of normal attention, concentration, orientation, and fund of knowledge had little probative force to detract from Plaintiff's reports of disabling headaches"); *Taylor v. Astrue*, No. 7:10-cv-149-FL, 2011 WL 2669290 *3 (E.D.N.C. Jul. 7, 2011) ("[N]othing in the record

---

injections of Emgality for migraines (Tr. 844-45, 944, 1519, 48)) and opinion evidence (like Dr. Redd's photophobia

suggests that these [diagnostic] tests can confirm either the existence of migraines or their likely severity.") (citation omitted) (brackets omitted); *Harrington v. Colvin*, No. 7:15-cv-20-FL, 2016 WL 320144, at *4 (Jan. 4, 2016 E.D.N.C.) (ALJ reliance on the unremarkable result of CT scan "merely suggests that the cause of her headaches cannot be identified through such testing, not that she does not suffer from headaches."); *Strickland v. Barnhart*, 107 F. App'x 685, 689 (7th Cir. 2004) (unpublished) ("The ALJ . . . appears to have thought, incorrectly, that the [normal] neurological test results somehow undercut [plaintiff's] claims that her migraines are severely painful.").

As noted, the larger problem here is that the ALJ goes straight from listing this evidence to setting forth Shawn's RFC, which accommodates some of his alleged limitations (phonophobia) but omits others (photophobia, absenteeism, time off task) making it impossible to trace the ALJ's reasoning. (Tr. 25-30.)

The Commissioner also points to Shawn's activities of daily living (Docket Entry 11 at 10) but again fails to acknowledge that the intermittent nature of migraine headaches would only periodically impact daily activities. *See Patricia M.*, 2025 WL

---

limitation described above).

10

2697242, at *9 ("[T]he ALJ failed to acknowledge the possibility that Plaintiff engaged in the activities cited by the ALJ on days when Plaintiff did not experience a severe migraine that required her to lie down in a dark room[.]") (collecting cases).

Finally, the Commissioner also points to the medical opinion evidence. (Docket Entry 11 at 9.) However, as explained, Dr. Redd's opinion actually sets forth a migraine-related limitation to account for Shawn's alleged light sensitivity, which the ALJ failed to address. For all of these reasons, and consistent with the practice of other judges in this district in similar circumstances,[5] a remand for further administrative proceedings is proper.

D. The ALJ's Assessment of Shawn's Bathroom Usage Does Not Allow for Meaningful Review.

Shawn further contends that "[t]he ALJ erred by failing to evaluate [his] need for frequent bathroom usage when assessing the RFC." (Docket Entry 10 at 15.) As with its assessment of Shawn's migraine-related limitations, the ALJ's summation of the evidence related to Shawn's IBS lacks a logical bridge to his RFC determination omitting extra bathroom breaks or time off-task.

More specifically, in his decision, at step two and without elaboration, the ALJ noted that Shawn's IBS was a severe impairment. (Tr. 21 ("The claimant has the following severe impairments: status-post motor vehicle accident with intestinal injury/hernia, partial bowel resection and irritable bowel syndrome (IBS) . . . .").)

Next, at step three, the ALJ noted that Shawn's "gastrointestinal diseases have been considered under listings 5.06 and 5.08." (Tr. 24.) In support, the ALJ set forth the pertinent criteria for each listing and stated without elaboration or reference to the record that it had not been met. (Tr. 24.) Next, the ALJ assessed Shawn's RFC.

---

[5] *See, e.g., Patricia M.*, 2025 WL 2697242, at *8-12; *Myers*, No. 1:20-cv-00420, Docket Entry 16 at 4-13, *recommendation adopted*, slip op. (M.D.N.C. July 20, 2021); *Porterfield*, No. 1:18-cv-00319, Docket Entry 18 at 3-10, *recommendation adopted*, slip op. (M.D.N.C. Aug. 23, 2019); *Victor R. v. Colvin*, No. 1:24CV205, 2025 WL 33699, at *4-9 (M.D.N.C. Jan. 6, 2025), *recommendation adopted sub nom. Rivera v. Colvin*, No. 1:24-CV-205, 2025 WL 307347 (M.D.N.C. Jan. 27, 2025); *Darlene A. v. Colvin*, No. 1:23CV976, 2024 WL 5262869, at *4-7 (M.D.N.C. Dec. 31, 2024); *Thomas H. v. O'Malley*, No. 1:22CV876, 2024 WL 1350070, at *4-5 (M.D.N.C. Mar. 29, 2024); *Stephen B. v. O'Malley*, No. 1:22CV1026, 2024 WL 945065, at *6 (M.D.N.C. Mar. 5, 2024); *Jennifer V.T. v. Kijakazi*, No. 1:22CV417, 2023 WL 6388203, at *8 (M.D.N.C. Sept. 29, 2023).

In pertinent part, the ALJ summarized Shawn's testimony as follows: "[t]he claimant testified he stopped working after his accident in 2021. He had bowel resection and had a hernia. He experiences pain in his stomach and has IBS." (Tr. 26.) The ALJ then correctly observed that Shawn was involved in a motor vehicle accident on his alleged onset date. (Tr. 27, 310.) An "exploratory laparotomy was performed [which] revealed ileal mesentery with active oozing; the bowel was deemed non-viable[;] and 15cm of the ileum was resected." (Tr. 27, 312-13.) Shawn was subsequently seen with complaints of rectal bleeding and diarrhea and was found to have a ventral hernia and internal hemorrhoids that would eventually require repair. (Tr. 27, 759, 772-74.)

The ALJ then noted that on November 4, 2022, Shawn complained of "diarrhea (improved with cholestyramine)." (Tr. 27, 764.) In February of 2023, the ALJ pointed out, Shawn's provider noted a "concern for fecal incontinence and passing bowel movements without realizing it" though on examination Shawn had mild tenderness related to his hernia but an otherwise normal exam. (Tr. 27, 832-33.) The ALJ next noted that Shawn complained of diarrhea and abdominal pain at a January 2024 consultation, where he could not toe walk due to abdominal pain. (Tr. 28, 1518-20.)

The ALJ also accurately pointed out that in February of 2024, Shawn presented to the emergency room for abdominal pain over his hernia site and also complained of diarrhea. (Tr. 28, 1543-72, 1546 ("Patient with history of abdominal hernia presents with progressively worsening abdominal pain, nausea, vomiting and bowel incontinence that has been going on since Monday but has gotten worse today.").) The ALJ pointed out that Shawn's partner reported a possible overdose in that his symptoms began after taking an excessive amount of medication and drinking heavily. (Tr. 28, 1549-50.) Shawn denied this and left the emergency room against medical advice. (Tr. 28-29, 1543, 1548.)

The ALJ then considered the medical opinions. In pertinent part, the ALJ noted that the light work recommended by the non-examining state agency consultant was consistent with his "abdominal pain." (Tr. 29, 80-82, 92-95.) However, the ALJ's RFC did not accommodate any need for additional bathroom breaks or time off task. (Tr. 25-26.)

In sum, the ALJ summarized evidence and concluded that the RFC accommodates Shawn's IBS. However, Fourth Circuit precedent is clear that meaningful review is frustrated where an ALJ goes straight from listing evidence to stating a conclusion. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). And beyond this, the Fourth Circuit

12

Case 1:25-cv-00118-JGM    Document 13    Filed 03/04/26    Page 12 of 15

has pointed out that "[o]bviously, the need to visit the bathroom many times throughout the day impacts one's ability to work." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 389 (4th Cir. 2021) ("[T]he ALJ should evaluate the frequency at which Appellant needed to use the bathroom and analyze how that restriction impacted her ability to work."), *superseded by regulation on other grounds recognized by Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604 (4th Cir. 2025).

Thus, while the ALJ here did not necessarily have to include accommodations for bathroom breaks in the RFC, he did have an obligation to explain (and support with substantial evidence) his implicit finding that bathroom breaks beyond normal breaks in a workday were unnecessary. *See* SSR, 1996 WL 374185, at *6 (characterizing eight-hour workday as having "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals").

This error is not harmless. Shawn testified that his intestinal damage since his car accident (including removal of parts of his intestines) "keeps me sick and hurting on a daily basis where I use the bathroom five, six times a day. I have to run back and forth. I stay sick. Nauseated." (Tr. 43.) Sometimes it is more frequent. (Tr. 48.) He alleged waking up nauseous and vomiting, which might subside as the day goes on, but his "extreme diarrhea all through the day does not subside. I mean it keeps me going to the bathroom." (Tr. 51.) The vocational expert testified that if an individual were off task 15% of the workday, including bathroom breaks beyond customary breaks, he could not hold a job. (Tr. 58-59.) The vocational expert also testified that if an individual required between five to six unscheduled bathroom breaks lasting more than approximately 10 minutes each time, he would not be able to perform competitive employment. (Tr. 61.)

However, despite its materiality to the outcome of the case, the ALJ did not analyze whether Shawn needed additional bathroom breaks when assessing the RFC. (Tr. 25-30.) Nor did he make an allowance for time off task or explain why an allowance was unnecessary (Tr. 25-30), even though he found that Shawn's intestinal damage with bowel resection, hernia, and IBS constituted severe impairments at step two and discussed evidence (summarized above) related to that impairment in the decision (Tr. 21). The ALJ's medical summary contains an insufficient logical bridge to the RFC which does not account for these issues. (Tr. 27-30.)

Remand for further administrative proceedings is therefore warranted. *See, e.g.*, *Sharee B. v. Bisignano*, No. 5:25-CV-00045, 2025 WL 4065846,

at *16 (S.D.W. Va. Dec. 17, 2025) (remanding where ALJ "provided absolutely zero analysis regarding the effect on Claimant's RFC of the ongoing Crohn's-related symptoms" or "any analysis as to whether or not the 'ongoing symptoms of Crohn's disease' post-bowel resection would cause her to be off-task a significant portion of the workday"); *Joanne P. v. Dudek*, No. 5:24-CV-00384, 2025 WL 1510664, at *18 (S.D. W.Va. Apr. 22, 2025) (remand appropriate where ALJ determination lacked basis for no RFC limitations regarding bathroom breaks); *Laura J v. O'Malley*, No. 7:22-CV-00402, 2024 WL 1954157, at *5 (W.D. Va. Feb. 14, 2024) (same) (citation omitted); *Sharp v. Comm'r of Soc. Sec.*, No. 1:21-CV-00015-FDW, 2022 WL 949873, at *4 (W.D.N.C. Mar. 29, 2022) (same).

And the Commissioner's objections as to this issue are not persuasive. While the Commissioner asserts that Shawn's objection is no more than a "disagreement with the conclusions the ALJ drew from the evidence, which is not a valid basis for remand," (Docket Entry 11 at 18), this is not what Shawn is contending. Rather, Shawn contends (and the Court agrees) that the ALJ's analysis here lacks a logical bridge between the RFC and the omission or exclusion of time off task or extra breaks to use the bathroom. (Docket Entry 10 at 15.)

Next, the Commissioner contends that the ALJ adequately explained why Shawn did not require additional breaks or time off task beyond normal breaks to account for his bathroom usage. (Docket Entry 11 at 18-19.) In support, he points to medical evidence the ALJ relied upon, indicating that Shawn reported improvement with his bowel medication. (*Id.* at 19, Tr. 764-65.) Nevertheless, even if the ALJ accurately found that Shawn's IBS related symptoms improved, the ALJ did not find that they ceased entirely. The lack of explanation makes it impossible for the Court to determine whether the ALJ's determination is supported by substantial evidence. *See Sharee B.*, 2025 WL 4065846, at *16 (relying on similar reasoning).

The Commissioner also points to roughly seven hundred pages of record evidence and contends that it demonstrates that Shawn "did not require ongoing or extensive treatment for bowel complaints or urinary frequency during the relevant period." (Docket Entry 11 at 19 *referencing* 743-852, 868-1510, 1527-42.) But the ALJ never made such a finding in his decision and *post hoc* explanations like this by the Commissioner are not permitted. *See Anderson*, 2014 WL 1224726, at *1.

The Commissioner also points out that no medical opinion in the record indicates that Shawn required additional breaks or off task time to use the bathroom. (Docket Entry 11 at 19.) However, it was the ALJ who

14

concluded that Shawn's IBS was a severe impairment at step two and who therefore had an obligation to provide a logical bridge between his RFC determination and the evidence related to Shawn's IBS. That did not occur here.

In the end, the point here as to both Shawn's migraines and IBS is not that the record necessarily compels accommodation for light sensitivity, time off task, absenteeism, or extra breaks in the RFC, but that the evidence here triggers the ALJ's duty to explain their omission. Because the ALJ did not adequately do so, remand is required. Finally, the undersigned declines consideration of the additional issue(s) raised by Shawn at this time. *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763-64 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted de novo).[6]

V. CONCLUSION

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability be **REVERSED** and that the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Order. To the extent that Shawn seeks an immediate award of benefits, the request is **DENIED**.

A Judgment remanding this action will be entered contemporaneously with this Order.

_____
JoAnna Gibson McFadden
United States Magistrate Judge

March 3, 2026

---

[6] Shawn's final objection is that "[t]he ALJ erred by failing to perform a function-by-function evaluation of [his] contested and relevant abilities to lift, carry, push and pull weight." *See* Docket Entry 10 at 10. Because remand is proper for other reasons discussed above, there is no need to address that final objection. Nevertheless, the Court will note that, at least on its face, Shawn's argument seems to carry some force. As Shawn correctly points out, the ALJ never addressed a restriction imposed by one of his physicians limiting him to lifting no more than ten pounds. (*Id.* at 11-12, Tr. 476.) Nevertheless, in limiting Shawn to light work, the ALJ concluded that he could lift up to twenty pounds. 20 CFR § 416.967(b). The Commissioner may, if he so chooses, evaluate this apparent discrepancy further on remand.

15